# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **SIDNEY ELAIR** | * | **CIVIL ACTION NO. 08 CV 1090** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Sidney Elair, born February 16, 1958, filed an application for supplemental security income benefits on October 30, 2003, alleging disability as of May 31, 2002, due to right knee and neck injuries, high blood pressure, and shortness of breath.  After claimant was found not disabled by the Administrative Law Judge ("ALJ") by decision dated December 14, 2006 [Tr. 43-48], claimant filed an appeal.  By Notice dated April 12, 2007, the Appeals Council remanded this case.  (Tr. 86-88).

On remand, the Appeals Council ordered the ALJ to: (1) give further consideration to whether claimant performed substantial gainful work activity after the application date; (2) obtain updated treatment records, particularly as to his alleged impairment under listing 12.05; (3) evaluate claimant's mental

impairments; (4) give further consideration to claimant's residual functional

capacity; (5) further evaluate claimant's past relevant work; (6) give further

consideration as to claimant's education and literacy; (7) obtain supplemental

evidence from a vocational expert, and (8) if claimant was found disabled, conduct

further proceedings to determine whether drug addiction and alcoholism were

contributing factors material to the finding of disability. (Tr. 87-88).  By decision

dated April 22, 2008, the ALJ found  claimant not disabled.  (Tr. 13-25).  After the

Appeals Council denied claimant's request for review [Tr. 6-8], claimant filed a

Complaint with this Court.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the

parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence

in the record to support the Commissioner's decision of non-disability and that the

Commissioner's decision comports with all relevant legal standards.  *Anthony v.

Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and

conclusions are supported by substantial evidence, which can be outlined as

2

follows:[1]

## **(1) Consultative Examination by Dr. Kenneth A. Ritter, Jr. dated**

## **January 19, 2004**.  Claimant complained of right knee pain resulting from an

injury in 1995, a neck "crick" from an injury in 1989, possible hypertension, and

dyspnea on exertion.  (Tr. 169).  He was on no medications and saw no regular

physicians.

On examination, claimant's blood pressure was 130/98.  (Tr. 170).  His neck

had full range of motion without pain.  His lungs were clear.

In the extremities, claimant had a normal gait and station.  He complained of

pain with full range of motion in his right knee.  He had no redness, heat, or

swelling of any of his joints.  Neurologically, he was intact with normal DTRs,

strength, and sensation.

Dr. Ritter's impressions were a recent diagnosis of hypertension with

elevated blood pressure on examination; complaints of episodic knee pain since

1995, a crick in his neck since 1989, and complaints of dyspnea on exertion.  (Tr.

171).  Dr. Ritter noted that claimant continued to smoke fairly heavily.

In the Medical Assessment of Ability to do Work-Related Activities

---

[1]While all of the medical records were reviewed by the undersigned, only those pertaining
to this appeal are summarized herein.

(Physical), Dr. Ritter found that claimant had no restrictions.  (Tr. 172-73).

**(2) Records from Medical Center of Louisiana dated November 27-30, 2001**.  Claimant was admitted after he was hit by a car while riding a bike.  (Tr. 187).  He complained of dizziness, weakness, headaches, confusion, and shortness of breath.  (Tr. 187-190).  He reported that he had drank two quarts of beer that day.  (Tr. 187).  He also had a history of IV drug abuse, and crack and marijuana use.  In house, he was a behavior problem and was combative with staff.  (Tr. 180).  His urine toxicology came back positive for cyclobenzaprines.

A head CT revealed a right frontal contusion with a mild amount of surrounding edema.  (Tr. 177-79).  X-rays showed a band-like opacification of the left lung base consistent with atelectasis.  (Tr. 190).

On mini-mental status exam, claimant was oriented to person, place, month, and year, but not to date.  (Tr. 180).  He was oriented to current events.  He was discharged with a diagnosis of post-head trauma SIADH, disorders of neurohypophysis, mixed/unspecified drug abuse and unspecified use, late effect of intracranial injury without skull fracture, and essential hypertension, unspecified benign or malignant.  (Tr. 176, 180).

**(3) Psychological Evaluation from Dr. Henry J. Lagarde dated May 15, 2006**.  Claimant reported that he was able to perform all self-activities

4

independently.  (Tr. 204).  He knew how to cook simple items, enjoyed watching television, and performed all household chores.  He had a few friends with whom he spent time.  He could go into town and shop alone.  He could manage money and make correct change.  He had a driver's license.

Claimant organized his thought process in a logical fashion, and his speech was fluent, coherent, spontaneous, and appropriate to issues discussed.  (Tr. 206).  He maintained adequate attention and concentration.  His memory was impaired.  He was oriented in all spheres with a fair knowledge of current events.

Claimant's abstract thinking was fairly poor.  He reported no visual or auditory hallucinations.  His perceptual/motor coordination was moderately impaired.  His affect was depressed.  His capacity for judgment and insight were impaired.

Claimant reported no history of substance abuse problems.  However, he claimed to drink a quart to two quarts of beer every day in order to relax.  He reported no history of substance abuse treatment.  (Tr. 206).

Claimant claimed that he had had much difficulty with police, and had been incarcerated on more than ten occasions, including the past year.  He reported that he had engaged in many fights of necessity to defend himself.  He had no current

girlfriends, but had many "lady friends."  He had friend with whom he regularly associated in a satisfactory manner.

IQ testing revealed a full-scale score of 71, verbal score of 76, and performance score of 70.  These scores were in the borderline range.  Persistence and concentration were good.

Dr. Lagarde's impressions were major depressive disorder, recurrent; alcohol dependence; polysubstance abuse (by history); adult antisocial behavior (fighting), and borderline intellectual functioning.  (Tr. 207).  He noted that it was possible that claimant's memory difficulties were associated with chronic alcohol abuse and possibly drug abuse if he was continuing to use drugs without stating so.

Dr. Lagarde opined that claimant was able to understand simple, detailed instructions, but would have difficulty remembering and carrying them out.  He stated that claimant would be able to attend to a simple task for two-hour blocks of time.  He noted that claimant would be able to maintain persistence and consistency during the course of a full-time workweek.  He wrote that claimant would have some difficulty coping with routine stressors associated with a full-time job because of regular fatigue associated with loss of sleep; however, he would be able to cope better if he had sleep aid.

Further, Dr. Lagarde found that claimant would eventually have difficulty satisfactorily on a consistently effective basis with supervisors and co-workers, particularly if he maintained his habit of regular drinking and possible drug use. He stated that claimant was capable of managing his own funds; however, "it is likely he would use funds for drinking and that the amount of drinking may increase if he had more money."

In the Medical Source Statement of Ability to do Work-Related Activities (Mental), Dr. Lagarde stated that claimant had slight impairments as to understanding, remembering, and carrying out short, simple instructions.  (Tr. 209).  However, he had marked limitations as to understanding, remembering, and carrying out detailed instructions, and as to his ability to make judgments on simple work-related decisions.  He also found that claimant had marked limitations as to interacting appropriately with the public and responding appropriately to work pressures in a usual work setting.  (Tr. 210).  He had slight limitations as to interacting appropriately with supervisors and co-workers.

Dr. Lagarde wrote that claimant's impairments included alcohol and/or substance abuse.  He opined that this abuse contributed to claimant's possible memory and concentration problems and possible aggressive impulse control problems.  He stated that if claimant was totally abstinent from substance abuse,

7

he would be able to understand, remember, and carry out detailed instructions,
better able to make judgments on simple, work-related decisions, and better able to
respond to work pressures.  (Tr. 211).

### (4) Consultative Examination by Dr. Ritter dated July 13, 2006.

Claimant complained of suffering from a right knee injury, which hurt him if was
up on it too long; a neck injury causing episodic neck pain depending on activities,
as well as neck stiffness in the early mornings; hypertension, and feeling shortness
of breath if he over-exerted himself or got overheated.  (Tr. 212).  He was not on
any medications.

On examination, claimant's blood pressure was 120/70.  (Tr. 213).  He was
6 feet 2 inches tall, and weighed 206 pounds.  His lungs were clear, and heart
rhythm was normal.

In the extremities, claimant had normal gait and station.  (Tr. 214).  His
upper extremities appeared normal, with full range of motion and no joint
problems.  He had a chronic rash on the lower legs and feet, and several calluses
on his plantar feet areas.  Neurologically, he was intact with normal DTRs,
strength, and sensation.

Dr. Ritter's impressions were complaints of episodic right knee pain with an
essentially normal exam; complaints of episodic neck pain, especially when

8

waking in the morning; hypertension, with normal blood pressure on examination; significant calluses on the bottoms of his feet, and ongoing significant alcohol and cigarette use.[2]  He noted that claimant had a past history of poly-substance drug abuse, including IV cocaine.

In the Medical Source Statement of Ability to do Work-Related Activities (Physical), Dr. Ritter found that claimant had no significantly disabling problems. (Tr. 221).  He stated that claimant had occasional limitations as to climbing, but could frequently perform all postural activities.

**(5) Records from Teche Action Clinic dated December 15, 2005**. Claimant complained of a skin rash and restless nights.  (Tr. 230).  He reported chronic shortness of breath, and was a smoker.  The assessment was chronic dermatitis, COPD/smoker, and insomnia.

**(6) Claimant's Administrative Hearing Testimony**.[3]  At the hearing on March 10, 2008, claimant was 50 years old.  (Tr. 282).  He had completed the

---

[2]Claimant had been treated for plantar warts on his feet in 1988. (Tr. 220-28).

[3]At the hearing on August 22, 2005, the ALJ remanded the case for additional development of the medical record.  (Tr. 234-46).  On remand, another ALJ held a hearing on November 16, 2006, and entered an adverse ruling.  (Tr. 247-73).  On April 12, 2007, the Appeals Council granted claimant's request for review, and remanded this case to the ALJ for a new hearing and decision.  (Tr. 86-89).  Claimant failed to appear at the first hearing, and the next one was postponed.  (Tr. 276-78; 109-112).  The last hearing was held before another ALJ on March 10, 2008.  (Tr. 279-94).

9

ninth grade.  He stated that he had last worked in 2002, painting offshore items

with an airgun.  (Tr. 284-85).  He testified that he had applied for jobs, but that

people were "afraid" of his injuries.  (Tr. 284).  Prior to that, claimant had worked

as a sandblaster and tractor driver.  (Tr. 285).

Regarding complaints, claimant testified that he had a head and neck injury,

had been in several car accidents, and had been in on-the-job accidents.  (Tr. 286).

He stated that he had been put in the hospital for a while, and that he had been

having memory problems.

Additionally, claimant complained of pain in his knee, which made it

difficult to walk.  (Tr. 287).  He also reported sleep problems.  (Tr. 288).  He

testified that he had not seen a doctor for a couple of years because he could  not

afford it.

Claimant did not think that he could work eight hours a day, five days a

week because of pain, depression, stress, and lack of sleep.  (Tr. 289).  He reported

that he mainly just stayed around his home.  He testified that he did odd jobs

occasionally, or picked up cans on the side of the road.

Claimant testified that he had been treated by Dr. Broussard at Teche Action

Clinic.  (Tr. 287).  He stated that he had last been treated in 2005.  (Tr. 288).

10

**(7) Administrative Hearing Testimony of Deborah Bailey, Vocational**

**Expert ("VE")**.        The record reflected that claimant was a commercial

fisherman in 1985, which was classified a very heavy, low semi-skillled work.  He

had also worked in construction as a sandblaster/painter in 1970, although he did

testify about some work in 2002, which would be classified as medium, skilled

work.  Additionally, he performed work as a tractor trailer driver in the cane field,

which was classified as sedentary, semiskilled work.

The ALJ posited a hypothetical in which he found the claimant to have a

medically determinable impairment likely to produce the following credible

symptoms and limitations if based on the record he was limited to sedentary, light,

and medium work.  The VE found that he could perform his past work as a

sandblaster/painter and tractor driver.  (Tr. 291).  The ALJ added the limitations of

slight to moderate limitations remembering and carrying out detailed instructions,

moderate limitations in his ability to work under conditions of stress with the

general public, and mild to moderate limitations in his ability to relate

satisfactorily or consistently with supervisors and coworkers.  In reponse, the VE

would not change his answer.

The ALJ further changed the hypothetical to add a claimant with alcohol or

drug abuse who had marked limitations in his ability to remember detailed

instructions, marked limitations in his ability to make judgments even on simple

work-related matters, marked limitations even on simple world-related matters,

marked limitations in his ability to respond appropriately to work pressure, and

marked limitations in his ability to interact with the general public.  In response,

the VE testified that he would not be able to perform any of that work.

Next, the ALJ posed a hypothetical where the claimant could do sedentary,

light, and medium work with the first set of limitations, none of his past

employment rose to the level of substantial gainful activity, and he had a ninth-

grade education.  (Tr. 291).  In response, the VE testified that there would be jobs

fitting in that hypothetical, including janitor and cleaner, of which there were

33,200 medium positions statewide, and 2,197,200 nationally.  (Tr. 292).  In the

light category, there were 2,900 jobs statewide, and 192,200 nationally.  For

groundskeeper, the number was 3,600 statewide and 249,100 nationally.

When the ALJ added the limitations of balancing, kneeling, crouching,

crawling, and stooping only occasionally, the VE stated that those restrictions

would eliminate the groundskeeper position.

**(8) The ALJ's findings are entitled to deference**.  Claimant argues that:

(1) the ALJ erred in disregarding the testimony of an expert witness, and (2) the

12

ALJ erred in failing to find him disabled pursuant to Section 12.05C in the listing of impairments.

In the first argument, claimant asserts that the ALJ disregarded the expert witness testimony of the psychological consultant as ordered on remand. However, the record reflects that claimant was evaluated by a psychologist, Dr. Henry Lagarde, and the ALJ thoroughly examined his opinion.  Dr. Lagarde did a complete evaluation, considering claimant's complaints, history, social life, activities, clinical findings, and IQ test results.

Although claimant reported no history of substance abuse problems, he informed Dr. Lagarde that he drank one to two quarts of beer daily. (Tr. 205-06). Additionally, claimant's medical reports indicated that he used not only alcohol, but also marijuana, cocaine, and heroin.  (Tr. 206).   In fact, Dr. Lagarde noted that "it is likely he would use funds for drinking and that the amount of drinking may increase if he had more money."  (Tr. 207).

 The Social Security regulations provide that alcohol and/or drug addiction that materially contributes to disability cannot be the basis for an award.  *See*, *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001).  "Material" means that a person would not be found disabled (based on his other impairments) if he stopped using

13

drugs and/or alcohol.  20 C.F.R. §§ 404.1535 and 416.935; *Hearings, Appeals and Litigation Law Manual* (HALLEX) Section I-5-314 (Nov. 14, 1997).

In this case, Dr. Lagarde opined that claimant was able to understand simple, detailed instructions, but would have difficulty remembering and carrying them out.  (Tr. 207).  He further found that claimant would be able to attend to a simple task for two-hour blocks of time.  Additionally, he noted that claimant would be able to maintain persistence and consistency during the course of a full-time workweek.  He wrote that claimant would have some difficulty coping with routine stressors associated with a full-time job because of regular fatigue associated with loss of sleep; however, he would be able to cope better if he had sleep aid.

Further, Dr. Lagarde found that claimant would eventually have difficulty satisfactorily on a consistently effective basis with supervisors and co-workers, particularly if he maintained his habit of regular drinking and possible drug use. He stated that claimant was capable of managing his own funds; however, "it is likely he would use funds for drinking and that the amount of drinking may increase if he had more money."

Despite claimant's substance abuse problems, which were well-documented in the record, Dr. Lagarde found that claimant was able to work full-time.  When

the ALJ added a restriction in the hypothetical to the vocational expert to work limited to one- or two-step procedures or instructions, the VE testified that claimant could perform his past work, as well as other jobs which existed in the local, regional, or national economy. (Tr. 269). As the ALJ's hypotheticals to the vocational expert reasonably incorporated all disabilities of the claimant recognized by the ALJ, and the claimant or his representative had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

While claimant argues that the ALJ erred in failing to conduct further proceedings to determine whether drug addiction or alcoholism were contributing factors material to the finding of disability [rec. doc.5 pp. 9-10], the undersigned observes that this was required only if the claimant *was found disabled* (Tr. 88). (emphasis added). That did not occur in this case. In any event, Dr. Lagarde found that drug addiction or alcoholism were not contributing factors material to the finding of disability. Accordingly, this argument lacks merit.

As to the second argument, claimant argues that the ALJ erred in failing to consider this matter pursuant to Listing 12.05, which provides, in pertinent part, as follows:

15

12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

***

C. A valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function.

(emphasis added).  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

Claimant argues that he meets this listing, because obtained a performance IQ score of 70.  However, he did not prove that he met the second part of § 12.05(C), *i.e*., "a physical or other mental impairment imposing an additional and *significant* work-related limitation of function."  (emphasis added).  While Dr. Lagarde found that claimant had borderline intellectual functioning, he determined that claimant was able to understand simple, detailed instructions.  He also opined that claimant would be able to attend to a simple task for two-hour blocks of time. He further noted that claimant would be able to maintain persistence and consistency during the course of a full-time workweek.

Additionally, Dr. Ritter noted on both examinations that claimant was on no medications and saw no regular physicians.  (Tr. 169, 212).   Further, Dr. Lagarde noted that claimant had no history of substance abuse treatment.  (Tr. 206). The opinions of these medical sources simply do not support claimant's argument that he has a mental impairment imposing a "*significant* work-related limitation of function."  (emphasis added).  Thus, this argument lacks merit.

For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  (emphasis in original).  *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990).  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  *Id*.  The ALJ specifically determined that claimant did not meet the listing at § 12.05.  (Tr.  20-21). As claimant has not demonstrated that he met all of the criteria under § 12.05(C), the ALJ's finding that claimant's impairments did not meet this listing is entitled to deference.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections

with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed this 19th day of October, 2009, at Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

18